Mr. Caldwell. Thank you, Judge. May it please the Court, my name is Mark Caldwell. I'm representing Mr. Mata this morning in this social security case, and taking my cue from Judge Reimer, I would like to reserve two minutes of my time for rebuttal. I'm speaking this morning for Mr. Mata because, as we know, he can't speak for himself, at least in English, and I think that this is a case of first impression, so far as I'm aware, regarding the need for a translator in consultative examinations arranged by the Social Security Administration. When I was thinking about this case, especially last night and this morning, if I can just tell a real quick personal story, I tore my rotator cuff a few months ago and had to have an MRI done. So I went into the radiologist's office and the technician met me there and said, here's your earphones and lay down on this table and we'll scooch you into this thing, and 15 minutes later I was done. A couple weeks later, I'm talking to my orthopedic surgeon and he's telling me what the radiologist reports it, and here's where your tear is and here's what we're going to do to repair it, etc. I had never even met the radiologist upon whose findings the orthopedic surgeon was depending to decide whether I was going to have surgery or not. Well, what's your point, that there can never be an interpreter in a case like this? My point is there's a big difference between the story I'm telling and the situation that happened with Mr. Mata. Yeah, well, let's talk about Mr. Mata. Are you asking us to somehow hold that you can never have, you can never credit somebody who operates through an interpreter in a context like this? Oh, absolutely you can credit someone who operates through an interpreter. That isn't what happened here. Dr. Geary did not operate through an interpreter. How did he operate? He effectively didn't. When it came to actually communicating with Mr. Mata, he did nothing. Well, let me ask you this. Is there anything in your view that's wrong with having ‑‑ I'm sorry, I can't remember what her title was. Ms. Borstein was a psychometrist, I think it was called. Well, then I can't pronounce that either. But anyway, would you have any problem with having someone of that qualification conducting the test? No. So what is the problem? The problem is that the test has to have a context for the person. She spoke Spanish. She spoke Spanish. And so you have no problem with somebody like her taking the test or conducting the test. So why is it a problem that somebody like that she conducted the test but did it in Nothing wrong with that so far as it goes. Nothing wrong at all. The problem was it wasn't followed by an actual psychological examination by the psychologist. But that has nothing to do with translation. Correct. It has to do with translation. You wanted Dr. Geary to personally involve himself. Absolutely. And Dr. Geary doesn't speak Spanish. Correct. How would he involve himself? He can't. That's the problem. That's what I'm asking. Are you saying you can never have a situation like this that operates through somebody who's interpreting the language? Does the doctor have to speak the language of the person the doctor is talking to? No. He does not have to speak the language. He does have to have an interpreter when he speaks with the person being examined. And, you know, this is what the Commissioner's own regulations say. This isn't something I'm coming up with. This isn't novel. I'm not arguing case law or interpretations. The Commissioner's own regulation says you can object to a consultative examination on the basis of a language barrier. Maybe I wasn't very clear in my question. I understood you to say you didn't object to having the technician take the test that she took. So far as it goes, correct. So the translation really has nothing to do with your complaint. Your complaint is that the doctor, the psychiatrist, the one with the medical credential, didn't take some tests he should have taken. Wasn't the testing that's the problem, Judge? And if I may respectfully correct you about one thing. I do. That's why I'm asking you a question. You've used the word translation. There has been no translation in this case. Well, yeah, but I'm trying to focus you in to find out what your problem is. Is the problem that somebody with the right credentials never took, never himself personally examined your client in the way that you believe should have happened? Precisely. That has nothing to do with translation or interpretation or anything else. It's just the absence of a test. Or is that wrong? It is wrong, Judge. The testing is one part, but it's only one part of an examination. The medical materials I put in my brief talk about the importance of the clinical interview when conducting a psychiatric or psychological consultative examination. These examinations go beyond simply giving a test. If that were the case, then the commissioner wouldn't have a regulation that says PhDs and MDs are the people who are medically acceptable sources. The commissioner would simply have a regulation that says psychometricians or whatever we're calling them are perfectly acceptable in and of itself. And, of course, that's not the case. The commissioner does require that there be MDs or PhDs who are so-called medically acceptable sources, and that's what's lacking here because there was no interaction whatsoever, none, zero, zip, between the examiner and the person being examined. This was just simply cold tests. Now, maybe cold tests are okay if you're looking at an MRI because you don't have to interact with the person to interpret an MRI. Cold tests are not okay when it comes to the hands-on type of examination that we're dealing with here in the mental health category. I hear you're saying there must be an evaluation done between the medical professional and the person involved. And that's the problem here. You say there wasn't one done. That is correct. Let me give you a hypothetical and see how you would respond to it. Forget the language problem. Yes, sir. Let's assume the we'll call them X, the individuals being examined. Two ways of doing it. One way is for the psychiatrist or the psychologist in this case to personally sit down and ask the questions and hear the responses. The second way of doing it is for a, what we would call a paralegal or for a trained assistant to come in, do the interview, make notes, and turn that reported interview over to the psychologist who then evaluates the case. I take it what you're saying is, B, the second alternative would be unacceptable. It is under the Commissioner's own regulations, yes. And your argument here is that the intrusion of a language barrier so that the psychologist himself could not in fact have conducted the examination, the intrusion of that language barrier doesn't change that parameter. Correct. Let me make one other point, and I want to do this one. Do I have your issue? You have it. Absolutely correct. Okay. But I wanted to be sure I understood what you were arguing. Absolutely. And let me remind you what actually happened in this case, please, that when the objection was made, the administrative law judge said, I would be shocked if what your client is telling you is true. I'm going to write to Dr. Geary. Dr. Geary writes back and says, it is true. The judge says, it doesn't make any difference. I'm going to rely on it anyway. I'm going to reserve the rest of my time for rebuttal, if I may. Surely. Good morning, Your Honors. I'm Gerilyn Gullseth, representing the Commissioner. This case is going back before an ALJ for a new hearing on vocational issues. So the plaintiff is the judge. If we don't – I'm glad you started out that way. If I may interrupt, and I may have to go back to Mr. Caldwell. I'm a little confused as to exactly what is being appealed. That is, do you understand if we grant him his appeal, it will not go back, or do you think it's going back in any event? I'm sorry. Are you asking me what I believe the appellant's argument is? I'm asking you if you – is it your view that the remand decision by the court below is on appeal in the sense that if we grant – if we rule for him, there will never be a remand? Is that your understanding? Or is it your understanding that if we rule for him, there still will be a remand? Well, it would certainly be our position that there should still be a remand for further proceedings, even if – In which case, we don't have a final judgment. From the district court, or – If he's not appealing the fact of the remand, then we don't have a final judgment, do we? I've forgotten the name of the case, but didn't the U.S. Supreme Court – Forney v. Apfel says, yes, we do have a final judgment. Because I was on that panel and took it on the chance, so I – I understood Forney, and maybe we need to work this out separately, but I understood Forney to say you can appeal the remand decision if you are saying there should have been no remand. I didn't understand Forney to say it's okay to bifurcate the case and take half of it up and remand the other half, because then I don't – I don't understand – I don't need Forney to apply to that, but I could be wrong. Well, I guess the issue in Forney was whether a plaintiff can appeal a remand because he hasn't achieved everything he sought by bringing the case in the first place. Exactly. And Justice Breyer, as I read Forney, said, yes, you can appeal a decision to remand because what you're saying is, is the judgment of remand was in error. Is he saying the judgment of remand is in error, or are you saying it's – the judgment of remand isn't that issue, it's the other stuff that's at issue? Do you understand my question? Well, it's – I suppose we wouldn't be here if he didn't think – if he didn't believe there was an error, but our position is that the district court remanded the case, and it's going to go back and be redone. Regardless of what we do. Well, in Harmon v. Apfel, this court addressed sort of a – sort of a similar situation where the district court had remanded for further evidence, specifically vocational expert testimony, as the district court did in this case. And at the end of the decision, the Ninth Circuit stated that it did not have to address the other issues, even though the claimant argued that they would have constituted a separate basis for immediate payment of disability benefits. The court found that there were enough unanswered questions in the record, and that the district court had properly exercised its discretion by remanding to resolve those conflicts and get that additional testimony. All right. I don't want to take all your time on that – that issue. I will – I'll just have to straighten it out myself later. Thank you. Go ahead with your argument. Well, actually, that was – that was my first point, is that this court actually need not address any of the issues that the claimant has raised under Harmon, and he is free to re-argue evidentiary issues, even medical issues, before the – before the ALJ. But speaking to Dr. Geary's report, the claimant argues that the ALJ violated the regulations in relying on Dr. Geary's report, but actually, the ALJ did exactly what the regulations required. After the claimant objected to the report, the ALJ sought clarification from Dr. Geary and was satisfied that the report was reliable, that Dr. Geary had exercised his professional opinion to rely on Ms. Bornstein's test results and her interview to, you know, properly make his conclusions, which were very consistent with other psychological examiners. And in fact, the one psychological examiner that stands in contrast to the three in the record were – was Dr. Ben Como, which was a report that was secured by claimant's counsel. Dr. Angelo, who was a consultative examination obtained by the commissioner early on in the development of the claim, made very similar findings to Dr. Geary, which lends reliability or, you know, lends probative value to his report. I mean, if it stood alone and was completely conflicting with the record, I could maybe understand, you know, that the language barrier might be an issue, but certainly not in this case. And I just want to address Gocasian, which is the supplemental site that the claimant had submitted the other day. That case is distinguishable from the case before this Court. In Gocasian, there were three opinions of disability, and the one opinion of malingering was made by a first-year resident who had not – they weren't even sure he had spoken with the claimant, who did not speak English, whereas here, there were questions of malingering that were raised by Dr. Angelo well before Dr. Geary ever rendered his report. And Dr. Geary relied on the psychometrician's test results and her interview, and she did speak fluent Spanish with the claimant. So I don't believe Gocasian adds anything to claimant's argument. Again, it's our position that the district court properly remanded this case because of the outstanding issues on the vocational expert testimony, and that this Court should affirm the district court judgment. If there are no other questions. Okay. Mr. Caldwell, thank you. Mr. Caldwell, just briefly, I don't want to take the time. I was going to go after you, too, so. Are you appealing – let me ask you this question. Do you want to keep in place the further vocational expert testimony remand, or are you telling us you don't want that? Well, that's a given, because the Commissioner didn't approve it. What's a given? The issues upon which the district court ruled in Mr. Mata's favor, the incomplete hypothetical to the vocational expert and the – So you still want that remand. That's all he's asking. No, I don't. Okay. I'm simply saying that that's not an issue in the case because the Commissioner didn't file a cross-appeal. But it becomes moot once this Court credits the improperly discredited evidence as true and then remands for payment of benefits. And Moyza had just been decided when I filed my reply brief. And since Moyza, Beneke has been decided, and I cited that in my Rule 28 letter that Ms. Goldsteth referred to. And those are very strong cases for crediting as true and remanding for payment of benefits. What are you asking us to do and why? I am asking you to find that the ALJ improperly relied upon Dr. Geary's report because there was a language barrier and because Mr. Mata objected on the basis of a language barrier, and that is the Commissioner's regulation. All right. Assuming we find that you're correct on that, then what remedy do you want? That's where I'm finishing my answer to both of them. That being the case, the ALJ improperly relied upon the Geary report to discount the Bencoma report. If Geary's report cannot be found to discount the Bencoma report who did speak to the language, then the vocational expert's testimony was that a person so limited would not be able to work. That is uncontested testimony from the Commissioner's own expert. Once that testimony is credited as true, remand for award of benefits is the appropriate remedy, and that's what I'm asking this Court to do. My time is up. If I have any other questions to be answered, I'll be happy to answer them. If it's remand for an award of benefits, what you're actually saying is reverse an order of benefits. It's sort of a semantic difference. The way I view it is everything's a remand. It's just a matter of what kind of a remand. There's a remand for further administrative proceedings, and there's a remand for award of benefits. But you do not want the remand that the trial judge ordered. That's my fallback position, certainly. It has to be judged because the Commissioner didn't cross-appeal. If this Court rules against me, the district court remand order remains in effect. I'm not going to appeal the part that was favorable to me. But having said that, that was considerably less than half a loaf and, in my personal opinion, would result in another more technically proficient, unfavorable decision. And that certainly is not what I want. Roberts. Thank you. Thank you. Counsel, the matter just argued will be submitted.
judges: Trott, Rymer, Plager